IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ANTRELL DESHARRON LEWIS,<br><br>    Defendant. | NO. CR16-1045-LTS<br><br>**DEFENDANT ANTRELL LEWIS SENTENCING MEMORANDUM** |

COMES NOW Antrell Desharron Lewis by and through the undersigned counsel and does hereby file the following sentencing memorandum:

## SENTENCING ISSUES

1. Whether the Defendant should be sentenced under the enhanced penalty provisions of 21 U.S.C. § 841(b)(1)(C) and 21 U.S.C. § 846 or whether the Defendant should be sentenced under the Drug Quantity Tables set forth in 2D1.1(a)(5). ?

2. Whether the Defendant should be credited with time previously served in a related case (2:16-cr-01017-001) pursuant to U.S.S.G. 5G1.3(b), or in the alternative whether the Court should vary from the calculated guideline sentencing range to reflect time previously served, disparity among individuals similarly situated, and due to the enhanced penalty resulting from the randomness of actual drugs distributed.

## ARGUMENT

Defendant has maintained throughout this proceeding that he should be held accountable for heroin and not heroin and furanylfentanyl. This was the defense presented, and which has been argued since the time of the court's findings. Court has previously ruled (Document #45) that Defendant should be held accountable for distribution of heroin and furanylfentanyl. Further, that the drug distributed by

1

Mr. Lewis to Joshua Manning, which Mr. Manning subsequently was involved in distributing to J.S., M.V. and A.K., caused the death and/or serious bodily injury of these three individuals. By the Court's findings the Defendant is subject to a 20 year mandatory minimum term of imprisonment under 21 U.S.C. 841(b)(1)(C) and 21 U.S.C. 846. Absent the Court's finding of the "but for" causation causing the death and/or serious bodily injury, the Defendant would be subject to a guideline score calculation using the drug quantity tables in 2D1.1(a)(5). Defendant continues to maintain that sentencing under those drug quantity tables would be the appropriate guideline range.

3. Defendant believes this case warrants a variance from the calculations of the United States Sentencing Guideline range. There are three potential reasons for the Court varying:

   a. The Defendant's previous sentence that was imposed in case # 2:16-cr-01017, which resulted in the Defendant receiving a sentence of 18 months, occurred during the same time frame as this offense. If all of these offenses had been charged in one indictment the Defendant would not have received any additional punishment for this prior case as that case would have been grouped under the provisions of 3D1.2(d). This argues for a downward variance in the amount of the sentence of that original case, a term of 18 months of imprisonment that was imposed on September 21, 2016 and which the Defendant has virtually served.

   b. The evidence introduced at trial included evidence that Mr. Lewis' drugs that had been distributed were "not as good as other drugs". *See*, Testimony of Troy Rambousek. Further, the evidence of drugs seized from Mr. Lewis and identified co-conspirator (Antoine Mitchell) verifies there was no uniform drug that was being distributed. Government Exhibit 2, and 101 and Defense Exhibit E all show drugs seized at differing times, either through controlled buys or searches. In these other drug crimes, the drugs were subject to lab testing, showing there was heroin and not the additional ingredient affirmed furanylfentanyl much less fentanyl. There is no showing that Mr. Lewis would have known of the specific contents of the drugs he sold to Mr. Rambousek, or which he was involved in distributing to Mr. Mitchell. There is clearly no

consistency of drug quantity in the "street world" of drug distributions. Neither the sellers nor the buyers are exactly certain of what they are selling or buying. Mr. Rambousek thought the drugs were not as good frequently, and obviously he has had numerous occasions where drugs that he obtained resulted in no death or serious bodily injury. The other drugs seized and tested do not have the potential aggravating factor of furanylfentanyl or fentanyl; it is obvious from reading newspapers that this particular ingredient seems to be having a devastating impact nationwide. However, there is no showing that the street level dealer knows exactly what he is dealing. It is a tragedy for J.S. that he consumed drugs that caused him to lose his life. But for good luck, M.V. and A.K. also may have suffered an even more serious impact and is certainly not "lucky" for Mr. Lewis that the Court has found Mr. Lewis distributed drugs having this additional aggravating substance. Whether that warrants, however, a sentence differing from 18 months to 292 months is a fundamentally different question.

c. Mr. Lewis further argues there is too much of a disparity in the potential results for the three key individuals involved in this case. Mr. Lewis, Mr. Manning, and Mr. Nadermann all were involved in handling some drugs on the early morning hours of March 1, 2016. Although Mr. Lewis still argues that the drugs he had and distributed to Mr. Manning were not the same drugs that Mr. Manning still passed on, it is clear both Mr. Manning and Mr. Nadermann had involvement in those subsequent distribution of drugs. Mr. Manning also showed a fairly callous attitude, both bragging as to the quality of drugs that he possessed, and even going so far as to further distribute drugs to a friend of his after this incident, knowing full well at that time those drugs could potentially be deadly. Mr. Nadermann, has somehow avoided any prosecution in this case. It is clear that Mr. Manning has received a reduction in his sentence under the substantial assistance provisions of the guidelines. That could warrant some difference, but not more than 2 ½ times difference between Mr. Manning and Mr. Lewis.

3

Mr. Lewis is an individual 24 years of age, and whose record prior to the current events reveal the longest term of imprisonment he ever previously received was 45 days in jail (Paragraph 37, Final PSIR). To jump from 45 days in jail to a sentence of a minimum of 292 months (calculated under the United States Sentencing Guideline System) is an amazing jump. Strict application of the Guideline Sentence in this case is not warranted as it would impose more punishment than is necessary in this situation. Assuming the Court still concludes the Defendant is subject to a mandatory minimum of 240 months of imprisonment, Defendant would argue that a term of imprisonment of 240 months would be sufficient but not greater than necessary in this case.

WHEREFORE, Defendant submits the foregoing Memorandum.

CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2017, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the following:

*Dan Chatham, AUSA*

By: _/s/ Barbara Boebel_

_/s/ Stephen A. Swift_
Stephen A. Swift AT0007751
KLINGER, ROBINSON & FORD, L.L.P.
401 Old Marion Road NE
P. O. Box 10020
Cedar Rapids, IA 52410-0020
(319) 395-7400
(319) 395-9041 (Facsimile)
sswift@krflawfirm.com

ATTORNEY FOR DEFENDANT